IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY H. SZOSTEK, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| DREXEL UNIVERSITY, | : | NO. 12-2921 |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM OPINION**

Tucker, C. J.                                                 December 16, 2013

In an Order and Memorandum Opinion dated September 11, 2013, this Court granted

Defendant Drexel University's ("Drexel") Motion for Summary Judgment on all counts.  The

factual background of this case was set forth in that Opinion.  Anthony Szostek ("Plaintiff") now

files the instant Motion for Reconsideration of the Court's Order and Memorandum Opinion,

asserting "the Court made errors in deciding facts and applying the law to Plaintiff's claims

under the FMLA and ADA." (Pl.'s Mot. Recons. 1.)  Specifically, Plaintiff contends the Court

committed eight errors of fact and six errors of law, for a total of fourteen errors.  The Court will

examine each of Plaintiff's arguments in turn.

## I.        STANDARD OF REVIEW

Motions for reconsideration are considered motions to "alter or amend" judgment under

Federal Rule of Civil Procedure 59(e).  The Third Circuit has held that a motion for

reconsideration will be granted only if the moving party can demonstrate one of the following:

(1) an intervening change in the controlling law; (2) the availability of new evidence that was not

previously available; or (3) the need to correct a clear error of law or fact to prevent manifest

injustice.  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River

Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  Motions for reconsideration,

however, should be granted sparingly "because courts have a strong interest in the finality of

judgments."  Douris v. Schweiker, 229 F. Supp. 2d 391, 408 (E.D. Pa. 2002) (quoting Cont'l

Casualty Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)); see also

Reynolds v. Aria Health, CIV.A. 12-2954, 2013 WL 3791010 AT *2 (E.D. Pa. July 22, 2013)

("[I]n light of the court's interest in the finality of its judgments, such motions should be granted

sparingly and may not be used to rehash arguments which have already been briefed by the

parties and considered and decided by the Court.") (internal citations omitted).

A finding of clear error requires a "definite and firm conviction that a mistake has been

committed."  Easley v. Cromartie, 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001)

(citing United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746

(1948)).  In order to show clear error or manifest injustice, the moving party "must base its

motion on arguments that were previously raised but were overlooked by the Court."  United

States v. Jasin, 292 F. Supp. 2d 670, 676 (E.D. Pa. 2003).  Accordingly, a motion for

reconsideration is not intended to allow a party a "second bite at the apple." Bhatnagar v.

Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995). "Parties are not free to relitigate

issues that the Court has already decided." Smith v. City of Chester, 155 F.R.D. 95, 97 (E.D. Pa.

1994); see also Glendon Energy Co. v. Borough of Glendon, 836 F.Supp. 1109, 1122

(E.D.Pa.1993) ("[A]a motion for reconsideration addresses only factual and legal matters that the

Court may have overlooked….It is improper on a motion for reconsideration to 'ask the Court to

rethink what [it] had already thought through—rightly or wrongly.'") (internal quotations

omitted).  Moreover, "[a] litigant that fails in its first attempt to persuade a court to adopt its

position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one. A motion for reconsideration should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided. Kennedy Indus., Inc. v. Aparo, CIVA 04-5967, 2006 WL 1892685 at *1 (E.D. Pa. July 6, 2006) (internal quotations omitted).

## II.   DISCUSSION

### A. TIMELINESS

The Court first addresses the timing of Plaintiff's motion.  Plaintiff filed the Motion for Reconsideration on October 9, 2013, exactly 28 days after the Court granted Drexel's Motion for Summary Judgment.  Rule 7.1(g) of the Local Rules of the U.S. District Court of the Eastern District of Pennsylvania provides: "Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of judgment, order, or decree concerned." However, Federal Rule of Civil Procedure 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).  Accordingly, Plaintiff's Motion for Reconsideration is timely under Federal Rule of Civil Procedure 59(e) (28–day period) but untimely under Local Rule 7.1(g) (14–day period).

A district court may waive application of a Local Rule where (1) "it has a sound rationale for doing so," and (2) doing so "does not unfairly prejudice a party who has relied on the local rule to his detriment." United States v. Eleven Vehicles, 200 F.3d 203, 215 (3d Cir.2000).  Here, waiving the Local Rule would allow the Court to address the merits of the fourteen errors Plaintiff claims the Court made in granting the Motion for Summary Judgment.  Further, Drexel does not argue that it relied on Local Rule 7.1(g) to its detriment, and indeed goes on to address the merits of Plaintiff's arguments.  Accordingly, the Court waives application of Local Rule 7.1(g) and will consider the substance of Plaintiff's motion. See U.S. ex rel. Galmines v.

<u>Novartis Pharm. Corp.</u>, CIV.A. 06-3213, 2013 WL 5924962 (E.D. Pa. Nov. 5, 2013); <u>Lang v.</u>
<u>Houser</u>, CIV.A. 11-4638, 2012 WL 2135575 (E.D. Pa. June 13, 2012); <u>Stroud v. Boorstein</u>,
CIV.A. 10-3355, 2012 WL 309631 (E.D. Pa. Jan. 31, 2012).

### B.  ABSENCE OF ERROR OF FACT [1]

#### 1. The Court Did Not Err in Finding that Plaintiff's Workers' Compensation Leave Ran Concurrently with his FMLA Leave

Plaintiff first improperly attempts to relitigate his position that his workers' compensation

leave did not run concurrently with his Family Medical Leave Act ("FMLA") leave.  Plaintiff

previously raised these same arguments in his Reply in Opposition to Drexel's Motion for

Summary Judgment. (<u>See</u> Pl.'s Reply 1-3.)  The Court extensively considered and addressed

these arguments in its Memorandum Opinion, <u>see</u> Mem. Op. n. 10, n. 11, and will not repeat that

analysis here.

Likewise, Plaintiff's argument that Drexel never informed him that he exhausted his

leave has already been briefed by the parties and decided by the Court. (<u>See</u> <u>id.</u> at n. 19.)  The

record evidence demonstrates that Plaintiff's FMLA leave entitlement was exhausted by

September 7, 2010. (<u>See</u> Section II.B.4, *infra*.)  Drexel was not required to specifically notify

Plaintiff as to each date that was designated as FMLA leave. See <u>Katekovich v. Team Rent A</u>

---

[1] Generally, in his Motion for Reconsideration, Plaintiff frequently faults the Court for allegedly accepting Drexel's version of the facts and "disregarding" Plaintiff's version of the facts. (<u>See</u> <u>e.g.</u>, Pl.'s Mot. Recons. 24.) To the extent the Memorandum Opinion accepts Drexel's version of the facts and not Plaintiff's version, this is only because Drexel's version of certain facts is supported by the record evidence while Plaintiff's is not.  By accepting the version of the facts that is actually supported by the record evidence, the Court does not impermissibly draw interferences in favor of moving party. See <u>Yansick v. Temple Univ. Health Sys.</u>, CIV.A. 04-4228, 2006 WL 2243178 at *9 (E.D. Pa. July 27, 2006) <u>aff'd</u>, 297 F. App'x 111 (3d Cir. 2008) ("Where the nonmoving party fails to identify specific facts in opposition to the factual assertions and arguments advanced in the motion, the district court is not obliged to 'to scour the entire record to find a factual dispute.'") (quoting <u>Dawley v. Erie Indem. Co.</u>, 100 Fed. Appx. 877, 881 (3d Cir.2004)).  The actions taken by Drexel and The Hartford in the events leading up to Plaintiff's termination are well-documented.  Conversely, Plaintiff's evidence often amounts to little more than his own assertion that he does not remember certain things, or that he did not receive certain documents or hear certain information.  The Court is not obligated to accept Plaintiff's version of the facts where there is clear evidence to the contrary.

Car of Pittsburgh, Inc., 36 F. App'x 688, 691 (3d Cir. 2002) (relying on Ragsdale v. Wolverine

World Wide, Inc., U.S., 535 U.S. 81, 122 S.Ct. 1155, 152 L.Ed.2d 167 (2002)).  It is therefore

immaterial whether or not Drexel informed Plaintiff that his FMLA leave had been exhausted.

### 2.  The Court Did Not Find that Plaintiff's Medical Condition Requiring FMLA Leave Would "Only Last for a Period of Six Months"

Plaintiff next claims that the Court "erroneously found" that Plaintiff's condition

requiring FMLA leave "would only last for a period of six months."  The Court made no such

finding.  In its Memorandum Opinion, the Court stated the following: "Plaintiff's Medical

Certification estimated that Plaintiff would have approximately ten 'flare-ups' per months *over

the subsequent six months*.  Plaintiff's Medical Certification estimated that each 'flare-up' would

last approximately two days." (Mem. Op. 4) (emphasis added).  The Court's statement was based

on information explicitly contained in Dr. Hart's Medical Certification.  Question 7 of the

Medical Certification expressly asks: "Based upon the patient's medical history and your

knowledge of the medical condition, estimate the frequency of flare-ups and the duration of

related incapacity that the patient may have *over the next 6 months* (e.g., 1 episode every 3

months lasting 1-2 days)." (Def.'s Mot. Summ. J., Ex. 13) (emphasis added).  Dr. Hart responded

to this question by estimating a frequency of ten "flare-ups" (episodes) per month lasting two

days at a time.  The Court, in its Memorandum Opinion, only repeated Dr. Hart's medical

opinion.  At no point did the Court find that Plaintiff's condition would "only last for a period of

six months."  Moreover, even if the Court had made such a finding, the duration of Plaintiff's

medical condition was immaterial to resolving the Motion for Summary Judgment.

### 3.  The Court Did Not Err in Finding that Drexel's Policy and Practice was to Grant Intermittent Leave on a Six Month Basis

Plaintiff next argues that "[e]vidence in the record indicates that a material factual issue exists as to whether Drexel granted intermittent leave on a six month or yearly basis." (Mot. Recons. 5.)  No genuine issue of material fact exists on this point.  At the time of Plaintiff's February 4, 2010 FMLA leave request, it was the policy and practice of Drexel to require recertification of intermittent FMLA leave after six months.  The Employer Approval Form — which, as its title suggests, informed Plaintiff that his request for FMLA leave had been granted — clearly indicates that Plaintiff's approved period of FMLA leave was from February 5, 2010 to August 4, 2010. (Def.'s Mot. Summ. J., Ex. 14.)  As discussed at length in the Memorandum Opinion, Plaintiff would have been aware that his request for FMLA leave was approved on a six month basis had he taken measures as simple as providing a valid mailing address. (See Mem. Op. 4-5, 20-21.)  Plaintiff's personal belief that intermittent leave was for a period of one year is irrelevant. (Id. at 3, 5, 17, 20-21.)

Plaintiff's citation to the testimonies of Michael Smith, Francis Maahs, Nadia McCrimmon, and Kenyanah Jones — now cited for the first time by Plaintiff in support of this argument — also do not create a genuine issue of material fact on this issue. (See Pl.'s Mot. Recons. 5-6.)  The question is not whether intermittent FMLA leave *could* theoretically last for up to one year.  The question is whether Drexel could require *recertification* of intermittent FMLA leave after six months.  The answer to that question is unequivocally yes. As previously discussed, Drexel's policy of requiring recertification after six months is fully consistent with FMLA regulations (See Mem. Op. 11-12.)

More importantly, however, it is immaterial whether or not Drexel granted intermittent leave on a six month or yearly basis.  As previously addressed in the Memorandum Opinion, Drexel did not ask Plaintiff to recertify his February 2010 intermittent FMLA leave after the six

months elapsed because Plaintiff had already exhausted his FMLA leave entitlement. (Id. at 6.)

Moreover, Drexel did not count Plaintiff's absences between September 7, 2010 and October 8,

2010 against him in the progressive discipline process. (Id. at 7 & n. 12.) Accordingly, the

recertification requirement is of little consequence and was not material to the resolution of the

Motion for Summary Judgment.

### 4. The Court Did Not Err in Finding that Drexel's Payroll Records Demonstrate that Plaintiff Exhausted his FMLA Leave by September 7, 2010

Plaintiff next argues that "Drexel's records and payroll codes do noT show or

demonstrate that Plaintiff exhausted his FMLA benefits at any time in 2010 and not by

September 7, 2010. Plaintiff was never told that his 60 days of FMLA were exhausted." (Pl.'s

Mot. Recons.6.)  Plaintiff's argument on this issue is largely repetitive of his argument that his

workers' compensation leave did not run concurrently with his FMLA leave (See Section II.B.1,

*supra*.) In addition, Plaintiff previously raised these same arguments in his Reply in Opposition

to Drexel's Motion for Summary Judgment. (See Pl.'s Reply 1-3.)  The Court extensively

considered and addressed these arguments in the Memorandum Opinion, see Mem. Op. n. 11,

and will not do so again here.

It appears to be Plaintiff's position that only those absences which were explicitly coded

as FMLA leave can, in fact, be counted as FMLA leave.[2]  However, this is simply not the case.

As has been discussed at length in the Memorandum Opinion, see id. at 2-3, 5, n. 10, n. 11,

Drexel's clear policies and procedures and the FMLA itself permit Plaintiff's paid sick and

vacation time and workers' compensation leave to run concurrently with his unpaid FMLA

---

[2] For example, Plaintiff's copy of his payroll records highlights only those absences which were coded as either "FMLA" or "FMLA sick," while ignoring all the other absences which were coded differently. (Pl.'s Mot. Recons., Ex. H.)  Thus, according to Plaintiff's calculations, he only took FMLA leave twelve times between February 2010 and August 31, 2010. (Id. at 7.)

leave.  As a result, leave that was coded as sick, vacation, and workers' compensation leave could and was counted against Plaintiff's FMLA leave entitlement.  Drexel included a summary chart calculating Plaintiff's monthly usage of intermittent FMLA leave in its Reply in Support of Motion for Summary Judgment. (See Def.'s Reply Supp. Summ. J. 7.)  For the sake of clarification, the Court provides the following, more detailed summary chart.

**Plaintiff's Absences Counted Toward His Intermittent FMLA Leave Entitlement**[3]

| Absence | Time Used | Code in Drexel's Payroll Records |
|---------|-----------|----------------------------------|
| February[4] | 1 day<br>3 days | Sick<br>Vacation |
| March 17 | 1 day | Vacation |
| April 5, 6 (3 hrs.), 7, 23, 27<br>    9 (50 mins.), 15 (1 ¼ hrs.), 16, 28 | 4.3 days<br>2.25 days | Vacation<br>Sick |
| May 10, 13, 14<br>    17, 18, 19, 21, 28 | 3 days<br>5 days | FMLA<br>FMLA sick |
| June 1, 4 (2 hr., 50 mins.), 7, 30 (1 ¾ hrs.)<br>    3, 11 | 2.4 days<br>2 days | FMLA sick<br>Sick |
| July 2 (3 hrs.), 9, 15, 16<br>    19, 20, 21,22, 23, 26, 27, 28, 29, 30 | 3.3 days<br>10 days | Vacation<br>Workers' Compensation |
| August 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 16,<br>    17, 18, 19, 20, 23, 24, 25<br>    27, 30, 31 | 18 days<br><br>3 days | Workers' Compensation<br><br>Vacation |
| September 3 | 8 hrs. | Vacation |

**Total Absences by September 7, 2010**: 66.25 days

---

[3] The information on which this chart is based is derived from Drexel's payroll records. (See Def.'s Reply Supp. Summ. J., Ex. A and Ex. B.)  The Court's calculations differ only slightly from Drexel's calculations.  Where necessary, the Court has rounded down.

[4] Drexel states it switched to electronic payroll records as of March 8, 2010. (See Doc. 38.)  Prior to March 8, 2010 Drexel utilized handwritten timekeeping records. (Id.)  It is unclear to the Court, from reading Plaintiff's handwritten payroll records for February 2010, which specific dates Plaintiff was absent during this month.  However, Plaintiff has not argued that he was not absent these four dates in February 2010, although he has argued these dates should not have been counted toward his FMLA entitlement.

**Plaintiff's Additional Absences Not Counted toward Progressive Discipline**

| Absence |
|---|
| September 7, 10, 16 (43 mins.), 30 (4 hrs., 20 mins.), 21, 22, 30 (3 hrs., 40 mins.) |
| October 4, 5, 8 |

**Total Absences not Counted: 8 (approximately)**

Thus, as can be seen, Plaintiff exhausted his intermittent FMLA leave entitlement by approximately September 7, 2010. Plaintiff in fact exceeded his FMLA leave entitlement by approximately eight days.

> **5.  The Court Did Not Err in Finding that Plaintiff was Not on FMLA Leave on October 21, 25-27, 29 and November 2-3, 2010 and Did Not Err in Determining that Plaintiff was Properly Disciplined on these Dates**

Plaintiff next argues that he believed he was still on FMLA leave on October 21, 25-27, 29 and November 2-3, 2010, and that the Court erred in finding that he was not on FMLA leave on these dates.[5] Plaintiff's suggests that his belief that he was on FLMA leave on these dates was

---

[5] Plaintiff specifically objects to the following statement made by the Court in the Memorandum Opinion:

> Rather, Drexel began its progressive discipline of Plaintiff's unapproved absences beginning with Plaintiff's absences on October 21, 25-27, 29, 2010 and November 2 and 3, 2010….

(Mem. Op. 7.) Plaintiff states "[t]he Court's finding that 'Drexel began its progressive discipline' is contradicted by Plaintiff's testimony and the testimony of other witnesses." (Pl.'s Mot. Recons. 8-10.) Plaintiff mischaracterizes the Memorandum Opinion, and takes the above-quoted sentence out of context. In context, the Court made the following statement:

> As previously stated, Drexel maintains that Plaintiff had exhausted his intermittent FMLA leave by September 7, 2010. Nonetheless, Drexel did not count Plaintiff's approximately eight days of unapproved absences between September 7, 2010 and October 8, 2010 against him during its progressive discipline process. Rather, Drexel began its progressive discipline of Plaintiff's unapproved absences beginning with Plaintiff's absences on October 21, 25-27, 29, 2010 and November 2 and 3, 2010.

(Mem. Opinion 7.) In stating that Drexel "began its progressive discipline" of Plaintiff's absences beginning with the October 21, 2010 absence, the Court intended only to point out that there were an additional eight absences between September 7, 2010 and October 8, 2010 that Drexel did not count as part of the progressive discipline process. Accordingly, Plaintiff had an additional eight absences that Drexel "conceivably could have" counted in its progressive discipline process, but did not. (See Mem. Op. n. 19.) Thus, the Court finds that this mischaracterized

justified because Mr. Nayar, at an October 25, 2010 meeting, informed him that he was still on FMLA leave.  Plaintiff contends the testimony of Mr. Fleming corroborates that Mr. Nayar made this statement.  Plaintiff previously alleged that Mr. Nayar provided him with certain information regarding the amount of leave he still had available. (See Pl.'s Resp. Opp'n Mot. Summ. J. 6, 14, 27.) The Court did not address this argument in its Memorandum Opinion, and will do so now.

The Court has found that Drexel's payroll records demonstrate the Plaintiff exhausted his intermittent FMLA leave entitlement by approximately September 7, 2010.  Plaintiff alleges, however, that Mr. Nayar gave him contrary information.  On the one hand, Plaintiff alleges that at an October 25, 2010 meeting, Mr. Nayar informed him "that he was still on FMLA and that he had to be clear about indicating what leave he used when he called out." (Id. at 14; see also Pl.'s Mot. Recons. 8-9.)  On the other hand, it is undisputed that, at a meeting on November 4, 2010, Mr. Nayar informed Plaintiff that he was no longer on approved FMLA leave.  At the summary judgment stage, the Court must accept as true Plaintiff's allegation that Mr. Nayar told him on October 25, 2010 that he still had FMLA leave available.  The question then becomes what are the implications of the misinformation Mr. Nayar allegedly provided.

Several cases speak to this precise issue. The leading case is Ragsdale v. Wolverine World Wide, Inc., which concerned a FMLA regulation which provided that leave taken by an employee did not count against the employee's FMLA entitlement if the employer did not designate the leave as FMLA leave.  The Supreme Court invalidated the regulation, finding that it was contrary to FMLA and beyond the authority of Secretary of Labor.  In doing so, the Supreme Court held that an employer's failure to designate leave as FMLA leave did not entitle a plaintiff to an additional twelve weeks of FMLA-protected leave after she had already taken in

excerpt from the Memorandum Opinion does not support Plaintiff's arguments.  Nonetheless, the Court will address the substance of Plaintiff's arguments because these arguments were previously raised in Plaintiff's Response in Opposition to the Motion for Summary Judgment, but left unaddressed by the Memorandum Opinion.

excess of twelve weeks of leave. <u>Ragsdale</u>, 535 U.S. at 84.  In reaching this conclusion, the

Supreme Court reasoned:

> This provision punishes an employer's failure to provide timely notice of the FMLA designation by denying it any credit for leave granted before the notice. **The penalty is unconnected to any prejudice the employee might have suffered from the employer's lapse. If the employee takes an undesignated absence of 12 weeks or more, the regulation always gives him or her the right to 12 more weeks of leave that year. The fact that the employee would have acted in the same manner if notice had been given is, in the Secretary's view, irrelevant.** Indeed, as we understand the Secretary's position, the employer would be required to grant the added 12 weeks even if the employee had full knowledge of the FMLA and expected the absence to count against the 12–week entitlement. An employer who denies the employee this additional leave will be deemed to have violated the employee's rights under § 2615 and so will be liable for damages and equitable relief under § 2617.
>
> The categorical penalty is incompatible with the FMLA's comprehensive remedial mechanism….

<u>Id.</u> at 88-89 (emphasis added).  Relying on <u>Ragsdale</u>, the Third Circuit in <u>Katekovich v. Team</u>

<u>Rent A Car of Pittsburgh, Inc.</u> held that an employer's termination of an employee three weeks

into the start of her hospitalization did not violate FMLA, absent a showing that the employee

could have returned to work within the twelve week FMLA leave period. <u>Katekovich</u>, 36 F.

App'x at 691.  The Third Circuit reached this conclusion even though it was undisputed that the

employer never informed the plaintiff that her leave was being designated as FMLA leave. <u>Id.</u>

Likewise, in <u>Lloyd v. Washington & Jefferson College</u>, the Third Circuit again relied on

<u>Ragsdale</u> in holding that the employer did not need to designate the plaintiff's leave as FMLA

leave in order for it to be counted against the plaintiff's FMLA leave entitlement.  288 F. App'x

786, 789-90 (3d Cir. 2008).  In <u>Lloyd</u>, the record was again clear that the plaintiff had

"exhausted any leave to which he might have been entitled," and had in fact taken more leave

than the twelve weeks granted by the FMLA.  <u>Id.</u> The district court's grant of summary judgment

in favor of the employer was affirmed.

The Fifth Circuit, also interpreting <u>Ragsdale</u>, has reached the same conclusion.  In <u>Durose v. Grand Casino of Mississippi Inc.</u>, a letter sent to the plaintiff by her employer's benefits administrator misinformed her as to when her FMLA leave expired. 251 F. App'x 886 (5th Cir. 2007).  The plaintiff did not dispute that she had taken twelve weeks of FMLA leave.  The Fifth Circuit specifically addressed the question of whether the administrator's letter "somehow extended [the plaintiff's] rights under the FMLA." <u>Id.</u> at 889.  The Fifth Circuit held that it did not. <u>Id.</u>  It reasoned that the FMLA "permits damages only to those employees whose FMLA rights have been violated." <u>Id.</u> (citing 29 U.S.C. § 2617).  Accordingly, because the employer had given the plaintiff all twelve weeks of leave to which she was entitled under the FMLA, the fact that the plaintiff was inadvertently misinformed about the amount of leave she had did not "create a statutory right to extra leave." <u>Id.</u>  In reaching this conclusion, the Fifth Circuit approvingly cited <u>Kelso v. Corning Cable Sys. Int'l Corp.</u>, in which the plaintiff's FMLA claim was again predicated on his employer misinforming him about the amount of leave he could take. 224 F. Supp. 2d 1052 (W.D.N.C. 2002).  The plaintiff in <u>Kelso</u>, like the Plaintiff here, also argued that his employer "failed to inform him and its other employees, generally, of the method of calculating FMLA leave." <u>Id.</u> at 1056. Nonetheless, the district found that "[a]n overestimate of leave by an officer or agent of an employer covered by the FMLA does not provide the basis for a cause of action under the FMLA." <u>Id.</u>

Similarly, the plaintiff in <u>Miller v. Pers.-Touch of Virginia, Inc.</u>, also alleged her employer misinformed her about how her leave would be calculated. 342 F. Supp. 2d 499 (E.D. Va. 2004) <u>aff'd,</u> 153 F. App'x 209 (4th Cir. 2005).  The plaintiff claimed her employer informed her that her accrued paid leave and unpaid FMLA leave would run consecutively. <u>Id.</u> at 502. Conversely, the employer claimed the plaintiff had been informed that the two forms of leave

would run concurrently. Id.  This disagreement is not unlike the dispute in the instant case, where Plaintiff has by turns argued that his FMLA leave and worker's compensation leave did not run concurrently, and that only leave which was specifically coded in Drexel's payroll records as unpaid FMLA leave should be counted toward his FMLA entitlement.  The court in Miller nonetheless held: "That the parties differ significantly with respect to what the plaintiff was told regarding her leave does not prevent the granting of summary judgment as these differences do not raise issues of material fact necessary to the disposition of this matter." Id. at 505 (internal citation omitted).  The Miller court, also citing Kelso, went on to conclude that the "version of events offered by the plaintiff [was] immaterial," in part because "an overestimate of leave by an officer or agent of an employer covered by the FMLA does not provide the basis for a cause of action under the FMLA." Id. at 509.

In addition, the Miller court observed that "Ragsdale instructs the court to take into consideration the reality of what would have happened had the notice [of designation as FMLA leave] been given, including whether or not the employee would have returned to work after taking leave." Id. at 514 (citing Ragsdale, 535 U.S. at 88–91).[6]  Further, to show that an employer's interference has prevented meaningful exercise of FMLA rights, a plaintiff must show that the interference resulted in prejudice. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 144 (3d Cir. 2004) (concluding that "the Supreme Court would find an actionable 'interference' in violation of § 2615(a) here in the event [the plaintiff] is able to show prejudice

---

[6] As noted in Miller:

> The Supreme Court's decision in Ragsdale did not decide whether the notice requirements in the regulations were valid, rather it focused only on the penalty provision of section 825.700. Other courts in interpreting Ragsdale have extended its holding to the requirement of notice and penalty provision in section 825.208(c)….

342 F. Supp. 2d at 514 (citing Katekovich, 36 Fed.Appx. at 691); see also Conoshenti, 364 F.3d at 143-44.

as a result of that violation") (citing <u>Ragsdale</u>, 535 U.S. 81 (2002)). "Courts have found that interference by failure to advise has prejudiced an employee where, had the appropriate information been provided, the employee could have structured leave so as to be protected by the FMLA." <u>Yansick v. Temple Univ. Health Sys.</u>, CIV.A. 04-4228, 2006 WL 2243178 at *10 (E.D. Pa. July 27, 2006) <u>aff'd</u>, 297 F. App'x 111 (3d Cir. 2008) (citing <u>Conoshenti</u>, 364 F.3d at 145). When an employee fails to adduce evidence that he could have returned to work earlier or that he would have structured his leave differently had his employer properly informed him of his FMLA eligibility, the employer is entitled to summary judgment. <u>See</u> <u>Wright v. Shore Mem'l Hosp.</u>, CIV. 11-5583 JBS/AMD, 2013 WL 6080072 at *9-10 (D.N.J. Nov. 19, 2013); <u>see</u> <u>also</u> <u>Weidner v. Unity Health Plans Ins. Corp.</u>, 606 F. Supp. 2d 949 (W.D. Wis. 2009).

It is clear from this case law that, after <u>Ragsdale</u>, a plaintiff must be able to demonstrate that he suffered prejudice as a result of his employer's failure to properly inform him in order to sustain a cause of action for interference under the FMLA.  That is to say, in order to make out an FMLA interference claim, a plaintiff must prove prejudice by showing, for instance, that had he been properly informed of his FMLA rights, he could have structured his leave differently. Here, Plaintiff generally argues[7] that Mr. Nayar misinformed him on October 25, 2010 that he was still on FMLA leave.  Plaintiff further argues that, when Mr. Nayar told him on November 4, 2010 that he was no longer on FMLA leave, Mr. Nayar also told him that he would not be disciplined with regard to the dates of October 21, 25-27, 29 and November 2-3, 2010.  Plaintiff contends that, on account of Mr. Nayar's misinformation, these dates (which total four absences

---

[7] Drexel discussed <u>Ragsdale</u> and its progeny in its Reply in Support of Motion for Summary Judgment and its Response in Opposition to Plaintiff's Motion for Reconsideration (<u>See</u> Def.'s Reply Supp. Summ. J. 23-28; Def.'s Resp. Opp'n Mot. Recons. 11-13.)  Plaintiff did not specifically address <u>Ragsdale</u> or the issue of prejudice in either his Reply in Opposition to Motion for Summary Judgment or his Motion for Reconsideration.  Nonetheless, the Court construes the arguments made in Section III.E of the Motion for Reconsideration, as well as any other relevant arguments the Court can discern, as Plaintiff's arguments regarding prejudice.

under the CBA) should not have been counted in the progressive discipline process. (Pl.'s Mot. Recons. 11.)

The Court finds that, even assuming Drexel interfered with Plaintiff's rights by misinforming him of his FMLA leave entitlement, no reasonable jury could find that Plaintiff suffered prejudice as a result of the interference. There are several reasons for this. First, as has been discussed, Drexel's payroll records indicate that Plaintiff had exhausted his full twelve weeks of FMLA leave by approximately September 7, 2010. Plaintiff in fact exceeded his FMLA leave entitlement by approximately eight days. Plaintiff has never denied that he was absent on these specified dates between February and October 2010. Throughout his briefings, Plaintiff has merely disagreed with how Drexel calculated his absences — *i.e.*, by concurrently counting his sick, vacation, and workers' compensation leave. The Court has extensively discussed the reasons why the FMLA, its regulations, and Drexel's clear policies and procedures permit these different types of leave to be counted concurrently. The fact therefore remains that Plaintiff received all of the leave that he was entitled to under the FMLA. Where an employer gives an employee all twelve weeks of leave to which he is entitled under the FMLA, there is no violation of the employee's FMLA rights. See Ragsdale, 535 U.S. at 88-89; Lloyd, 288 F. App'x at 789-90; Durose, 251 Fed. Appx. at 889-90; Katekovich, 36 F. App'x at 691. This is because the FMLA permits damages only to those employees whose FMLA rights have been violated. See 29 U.S.C. § 2617.

Secondly, again accepting that Plaintiff was provided misinformation on October 25, 2010, that misinformation was corrected on November 4, 2010 — just ten days later. Plaintiff does not deny that he was informed on November 4, 2010 by Mr. Nayar and Mr. Maahs that he was no longer on FMLA leave and that he needed to reapply for leave through The Hartford.

Moreover, Plaintiff has testified that beginning on November 4, 2010, Mr. Maahs (Mr. Nayar's superior) directed him to contact The Hartford to try to get his previous absences backdated. Plaintiff also testified that Mr. Maahs "continuously" encouraged him to get his pre-November 4, 2010 absences backdated as FMLA leave.  Thus, as of November 4, 2010, Plaintiff was on notice that his absences on October 21, 25-27, 29 and November 2-3, 2010 were *not* excused — despite what Mr. Nayar may have told him October 25, 2010.  For reasons that are unclear to the Court, however, Plaintiff did not request that The Hartford backdate these absences until after the absences had already been denied for late reporting. (Deutschman Dep. 16:14-17:1.)

Finally, as Drexel argues, Plaintiff has adduced no evidence from which a reasonable jury could infer that he would have done things differently had he not been allegedly misinformed by Mr. Nayar about his FMLA leave balance. Miller, 342 F. Supp. 2d at 514.  Plaintiff presents no evidence that he would have worked on the days that he missed in October and November 2010. On the contrary, Plaintiff's deposition testimony suggests he would have been unable to work. Plaintiff testified that he had no control over his "flare-ups" and that they occurred often and without warning. (Szostek Dep. 140:4-14, 181:17-21). Further, Plaintiff testified that he was completely incapacitated when a "flare-up" occurred, and therefore incapable of performing any work. (Id. at 178:3-8, 180:4-181:2, 182:1-183:22.)  Consequently, Plaintiff has not shown that Mr. Nayar's alleged misstatement prejudiced him in any way, because nothing in the record suggests Plaintiff would have been able to work on these days.

Accordingly, Plaintiff's claim for FMLA interference still fails as a matter of law. Wright, 2013 WL 6080072 at * 9-10.

### 6.   The Court Did Not Err in Finding that Plaintiff Failed to Timely Request that The Hartford Backdate Absences as FMLA Leave

Next Plaintiff contends that the Court erroneously found that he failed to have some of his absences backdated.  Plaintiff asserts this finding was incorrect for three reasons: (1) "Plaintiff testified that he did request that The Hartford mark his absences in November of 2010 as FMLA"; (2) "Plaintiff had already been told by Mr. Nayar that his absences before November 4, 2010 were covered"; and (3) "The Hartford's representative, Sarah Deutschman, admitted that Plaintiff contacted The Hartford and requested The Hartford to backdate days he took FMLA leave where he only notified Drexel, and not The Hartford, of his intermittent leave." (Pl.'s Mot. Recons. 13.)  Plaintiff further faults the Court for "only focusing" on Plaintiff's November 4, 2010 conversation with The Hartford, and "disregard[ing] the fact that Plaintiff had other conversations with The Hartford after November 4, 2010 and was informed by The Hartford that Drexel would not agree to backdate the prior dates as FMLA." (Id.)

The Court will first address Plaintiff's first allegation.  Here, Plaintiff again seeks to relitigate an issue that has already been considered and decided by this Court, and in doing so misconstrues what the relevant issue is.  The issue is not whether Plaintiff *ever*, at any point in time, sought to have his various absences backdated by The Hartford.  The issue is whether Plaintiff *timely* sought to have these absences backdated.  The Memorandum Opinion discusses Plaintiff's November 4, 2010 phone call with The Hartford in detail. (See Mem. Op. 8, 22-25, n. 14, n.15, n.16, n.17, n.19.)  However, nowhere in the Memorandum Opinion does the Court state or suggest that Plaintiff only spoke to The Hartford on November 4, 2010.  The record is clear that Plaintiff did, as he now argues, have multiple conversations with The Hartford.  Nonetheless, the Court focuses its attention on the November 4, 2010 call because, by all accounts, this was the first time Plaintiff contacted The Hartford.  As such, the November 4, 2010 call was Plaintiff's first opportunity to (1) request that his pre-November 4, 2010 absences

be backdated, and (2) timely report to The Hartford his post-November 4, 2010 absences. (Id. at 22.)  Plaintiff failed to do either of those things.  Importantly, Plaintiff has conceded that he failed to do either of those things. (See Szostek Dep. 131:19-23, 147:16-24.)

The testimony of Ms. Deutschman, now cited by Plaintiff for the first time in the instant motion, supports this conclusion.  The portion of Ms. Deutschman's deposition that Plaintiff now relies on clearly establishes that Plaintiff did not attempt to have his absences backdated until *after* the absences had already been denied for late reporting.[8]  That is to say, Plaintiff failed to comply with the reporting procedure he was repeatedly informed of, and his absences were ultimately denied as FMLA leave because they were reported late. (See Mem. Op. 25 & n. 19.) Moreover, the testimony of Ms. Deutschman does not, as Plaintiff claims, support his contention that it was Drexel that made the final decision to deny the backdating of Plaintiff's absences.[9] Ms. Deutschman testified that, after The Hartford took over administration of Drexel's FMLA policy on August 1, 2010, The Hartford had the sole discretion to grant or deny FMLA leave. (Deutschman Dep. 14:15-15:5.)  Testimony from Drexel employees corroborated Ms. Deutschman's testimony. (See e.g., Jones Dep. 29:25-30:19, 31:15-22; Nayar Dep. 33:18-24.)

---

[8] Specifically, Ms. Deutschman testified as follows:

Q:   Did Mr. Szostek call an employee of The Hartford…and request that The Hartford backdate or accept certain days as leave, where he had not called The Hartford on the day he took the leave?

A:   *Mr. Szostek called after he received the denial letter regarding those dates*, and I'm unsure of when he actually reported those dates, which call that was in.

Q:   Okay.  And based on that, did a Hartford employee then check with Drexel to see if they could backdate those dates and deem them as approved under the FMLA?

A:   Yes.

(Deutschman Dep. 16:14-17:1) (emphasis added).

[9] Plaintiff raised this argument in his Response in Opposition to Summary Judgment. (See Pl.'s Resp. Opp'n Mot. Summ. J. 8.)  The Court did not directly address this argument then, and will therefore do so now.

Ms. Deutschman did *not* testify that it was Drexel that made the decision to deny the backdating of Plaintiff's FMLA.  The portion of Ms. Deutschman's testimony cited by Plaintiff is taken out of context.[10]  Placed in its proper context, it must be noted that Ms. Deutschman also testified that the records indicated that The Hartford checked with Drexel to see if there were any extenuating circumstances that would excuse Plaintiff's late reporting.[11]  Because no extenuating

---

[10] Plaintiff cites the following testimony from Ms. Deutschman's deposition:

> Q:      You would agree, though, that [The Hartford's telephone note is] clear, it says: 'Advise that we did reach out to employer,' and with regard to that note it's clear someone from The Hartford reached out to the employer to inquire whether to backdate the FMLA days in November where Ms. Szostek did not call The Hartford.

> A:      Correct.

> […]

> Q:      And would you also agree that the employer communicated to that Hartford employee that *they* [Drexel] *would not agree* to allow the dates in November where Mr. Szostek did not contact The Hartford to be deemed FMLA days.

> […]

> A:       Correct.

(Deutschman Dep. 37:19-38:9) (emphasis added).  Drexel "not agreeing" to backdating the belatedly reported absences is not the same thing as Drexel "deciding" to deny backdating the absences.  In addition, Plaintiff neglects to cite Ms. Deutschman's response  to the very next question, where she elaborated on her response:

> Q:      Would you also agree that the employer had the discretion to allow those dates to be deemed FMLA dates?

> A:      Yes. (Pause)  May I expand on that?

> […]

> Q:      ….[I]f you want to expand, you know, I'm not going to say that you can't.

> A:      All right.  The regulations do allow for extenuating circumstances, and that's where the yes comes in.

(Deutschman Dep. 38:10-39:2.)  Ms. Deutschman had referred to these extenuating circumstances earlier in her testimony, and she went on to further discuss what qualifies as an extenuating circumstance. (See Deutschman Dep. 15:7-16:8, 39:4-20.)

[11] Specifically, Ms. Deutschman testified:

> Q:      ….I thought you said that there was an absence coordinator that would call someone at Drexel to seek approval of whether certain days would be deemed FMLA.

circumstances existed, The Hartford decided to deny the dates for late reporting.  Thus, Plaintiff's third allegation is also incorrect.

Finally, with respect to the Plaintiff's assertion that Mr. Nayar informed him that that his absences before November 4, 2010 were "covered," it is unclear to the Court to what Plaintiff is referring.  The Court assumes that Plaintiff is referring to the aforementioned November 4, 2010 conversation in which Mr. Nayar allegedly told Plaintiff that he would not be disciplined with regard to his absences on October 21, 25-27, 29 and November 2-3, 2010.  In support of this allegation, Plaintiff has cited the testimony of Mr. Fleming. (Pl.'s Mot. Recons. 10.)  Mr. Fleming testified, however, that Mr. Nayar told Plaintiff that these absences would be "excused," not they were "covered."[12]  "Excused" and "covered" have different meanings.  "Covered"

---

A:      In this case, *the leave would be denied per our policy and administration of FMLA because the dates were not reported timely.  Because Mr. Szostek indicated that he didn't understand that they were denied, that is when we reached out to the employer to find out if there were any extenuating circumstances surrounding the late report[ing].*  But that is standard procedure when there is a question about a denied status.

Q:      So, if I understand you correctly, the reason for the denial wasn't that he wasn't qualified to take FMLA; it was because he hadn't called The Hartford requesting the FMLA on the given day he wanted to take it?

A:      Correct.  So, Mr. Szostek's leave was approved.  He was eligible for leave.  Had documentation supporting his leave.  *The dates that he was denied, he was denied because they were reported late.  He was aware of the reporting guidelines, as provided on the telephone call upon intake* [on November 4, 2010].  There were dates within his leave that he was approved because they were reported timely and was enough frequency and duration of the leaves.

(Deutschman Dep. 15:7-16:8) (emphasis added).

[12] Specifically, Mr. Fleming testified as follows:

Q:      When [Nayar] told [Plaintiff] that his FMLA leave had expired, [Planitiff] said that he had not known that.  Is that accurate, that's what [Plaintiff] said?

A:      Yes.

Q:      [Plaintiff] asked what about the days before when he had taken FMLA leave.  [Nayar] said that he was going to *excuse* those days because [Plaintiff] was going to apply for FMLA leave right at that time.  Is that accurate?

A:      Yes.

implies that these absences were FMLA eligible.  The payroll records establish that they were

not, because Plaintiff had already exhausted his FMLA leave entitlement.  "Excused" implies

that these absences were not FMLA eligible, but that Mr. Nayar would nonetheless forgive the

absences.  For the reasons previously discussed, see Section II.B.5, *supra*, despite what Mr.

Nayar may have told Plaintiff on October 25, 2010, Plaintiff was aware by November 4, 2010

that these absences were not "covered."  Further, as a result of the "continuous" encouragement

of Mr. Maahs, Plaintiff knew he needed to get the absences backdated.  (See Mem. Op. 16 & n.

13.) The very fact that Plaintiff was "continuously" told the absences needed to be backdated

should have alerted him to the fact that the absences were not being "excused."  The fact remains

that Plaintiff did not timely request that the absences be backdated.  Thus, Plaintiff's second

allegation also fails.

### 7.   The Court Did Not Err in Finding that Drexel's Decision to Hold Discipline in Abeyance was not Evidence of Pretext

Plaintiff goes on to claim the Court improperly "accept[ed] that Drexel properly provided

Plaintiff with progressive discipline by listing the progressive discipline contained on the

Counseling Forms provided to Plaintiff on December 13, 2010." (Pl.'s Mot. Recons.16.)

Plaintiff further claims the Court "disregarded the fact that Plaintiff was never informed of any

of the alleged discipline on the alleged dates of discipline." (Id.)

The Memorandum Opinion did not directly address the fact that the Counseling Forms

were all written on the same day, or the fact that Plaintiff was not informed of his infractions on

the date that they occurred.  The Memorandum Opinion did, however, generally discuss Drexel's

decision to "hold discipline in abeyance." (See Mem. Op. 21-22.)  The Court considers it to be

_____

(Fleming Dep. 96:4-12) (emphasis added).

an overstatement for Plaintiff to argue that the Court held it was "proper" for Drexel to subject Plaintiff to progressive discipline in the manner employed here.  Nowhere in the Memorandum Opinion does the Court endorse the disciplinary method that Drexel utilized here.  The Court only found that holding discipline in abeyance was not pretexual given the complicated factual history of this particular case.

On the facts of a different case, an employer waiting to administer discipline and writing out numerous counseling forms all on the same day could be evidence of pretext.  On the facts of this particular case it is not, because of the admissions Plaintiff has made.  There appears to be some tension between the facts as conveyed in Plaintiff's deposition testimony, and the arguments Plaintiff has made in his Response in Opposition to Summary Judgment and his Motion for Reconsideration.  Plaintiff has conceded that Mr. Nayar and Mr. Maahs both encouraged him to reapply for FMLA leave through The Hartford. (See Mem. Op. 8, 16, 23, n. 19.) Plaintiff has further conceded that Mr. Maahs "continuously" urged him to try to get his previous unapproved absences backdated by The Hartford.  (Id.) The reason for this is that, had Plaintiff *timely* followed through with the directives given to him, the absences would have been excused and Plaintiff would not have been disciplined.  Thus, the purpose of holding discipline in abeyance was to give Plaintiff the opportunity to reapply for FMLA and properly report his absences.  Plaintiff concedes as much.  Yet, Plaintiff argues that Drexel "laid in wait" when it came to disciplining him so that it could "trump up" a reason to terminate him. (See Pl.'s Resp. Opp'n Mot. Summ. J. 27; Pl.'s Mot. Recons. 16.)  This argument is inconsistent with the admissions Plaintiff himself has made.

### 8.   The Court Did Not Err in Finding that Drexel's Decision to Terminate Plaintiff for "Proven Dishonesty" was not Evidence of Pretext

Plaintiff goes on to argue that the Memorandum Opinion "appears to adopt Defendant's position that Plaintiff was properly terminated for proven dishonesty." (Pl.'s Mot. Recons. 16.) Plaintiff argues this is improper because he believed he was on FMLA leave on October 21, 25-27, 29 and November 2-3, 2010.  Plaintiff then rehashes his arguments for why that belief was justified. (Id. at 17.)

The Memorandum Opinion extensively discussed the issue of proven dishonesty. (See Mem. Op. 17-20.)  That analysis will not be repeated here.  Plaintiff's disagreement with the Court's decision is not a proper basis for reconsideration.  Further, the arguments advanced in this section of Plaintiff's brief have already been discussed in Section II.B.5, *supra*.

**C. ABSENCE OF ERROR OF LAW**

> **1. The Court Did Not Err in Finding that Plaintiff Did Not Establish that a Genuine Issue of Material Fact Existed as to Whether there was a Causal Connection between his FMLA Activity and his Termination**

Plaintiff next argues that the Court erred in finding that he could not establish a genuine issue of material fact as to whether there was a causal link between his FMLA leave and his termination.  In support of this argument, Plaintiff again rehashes arguments which have already been briefed by the parties and considered and decided by the Court.  Not only this, Plaintiff also attempts to improperly rebrief his FMLA retaliation claim.  For instance, Plaintiff now argues there is both direct and circumstantial evidence of causation.  Plaintiff claims:

> Given the direct connection between Plaintiff's FMLA activity and its direct connection to Defendant's argument that Plaintiff engaged in proven dishonesty when he allegedly called out false FMLA, Plaintiff has supplied genuine issues of material fact that Defendant interfered with Plaintiff's FMLA rights and retaliated against Plaintiff for exercising his FMLA rights.  When you have direct proximity as we do here, there is no real need for temporal proximity.

Plaintiff's current position that "there is no real need" for the Court to consider temporal proximity because there is a "direct connection" between his FMLA activity and his termination

23

contradicts the arguments Plaintiff made in his Reply in Opposition to Motion for Summary

Judgment.  There, Plaintiff argued that the "close" temporal proximity between his FMLA

activity and his termination were unusual suggestive of causation. (See Pl.'s Reply 3-5.) In

addition, Plaintiff also offers the entirely new argument that the decision to terminate him

occurred on December 13, 2010 (the date written on the Counseling Forms), not January 5, 2010.

This is a clear attempt by Plaintiff to shorten the temporal gap between his FMLA activity and

his termination, and thereby bolster his retaliation claim. "A litigant that fails in its first attempt

to persuade a court to adopt its position may not use a motion for reconsideration either to

attempt a new approach or correct mistakes it made in its previous one." Kennedy Indus., 2006

WL 1892685 at *1.

### 2.   The Court Did Not Err in Finding that Drexel Holding Discipline in Abeyance was not Evidence of Pretext

Plaintiff next argues, in so many words, that the Court erred in finding that Drexel's

decision to hold discipline in abeyance was not evidence of pretext.  Plaintiff's arguments here

largely rehash his assertion that Drexel's decision to hold discipline in abeyance creates an

inference of discriminatory animus.  As previously discussed, see Section II.B.7, *supra*, the

Court did not find Plaintiff's arguments to be persuasive.  Plaintiff's merely disagrees with the

Court's conclusion that, even assuming he could make out a *prima facie* case of FMLA

retaliation, he would still be unable to establish that Drexel's legitimate, non-discriminatory

reasons for termination were pretextual.  This is not a valid basis for reconsideration.

### 3.   The Court Did Not "Find" that Mr. Maahs Continuously Encouraged Plaintiff to Get His Absences Backdated

Plaintiff next charges that the Court "found" that Ms. Maahs continuously urged Plaintiff

to get his previous unapproved absences backdated by The Hartford, but the Court "did not cite

Plaintiff's complete testimony." (Pl.'s Mot. Recons. 22.)  Plaintiff then proceeds to cite a greater

portion of his deposition testimony.  (Id.)  It is unclear to the Court what difference this additional testimony makes.  Further, the Court did not "find" that Mr. Maahs continuously encouraged Plaintiff to get his absences backdated.  Plaintiff *testified* that this is what Mr. Maahs told him to do.  The Court commits no legal error by citing as fact Plaintiff's own deposition testimony.

The additional testimony now cited by Plaintiff establishes nothing more than that Plaintiff spoke with The Hartford multiple times.  Additionally, in this testimony Plaintiff once again reiterates his argument that it was Drexel that made the decision to deny the backdating of his absences.  These issues have already been addressed by the Court in Section II.B.6, *supra*.

### 4.  The Court Did Not Find that Plaintiff Did Not Offer Comparator Evidence

Plaintiff next claims the Court "erroneously found that Plaintiff did not offer comparators discrediting Defendant's articulated reason[] for discharge," proven dishonesty. (Pl.'s Mot. Recons. 23.)  The Court finds this argument incredible, given the Memorandum Opinion's discussion of Plaintiff's comparator evidence (See Mem. Opinion 14-17.)

In his Response in Opposition to Summary Judgment, Plaintiff implied he was treated less favorably than other employees who were "dishonest," but provided no analysis as to how these other employees were proper comparators. (See Pl.'s Resp. Opp'n Mot. Summ. J. 21-23.)  Plaintiff also provided no details as to how the alleged dishonesty of those other employees compared to Plaintiff's alleged dishonesty.  Rather, Plaintiff offered nothing more than the conclusory assertion that other employees were also "dishonest" but kept their jobs.

Plaintiff now attempts to provide that analysis by claiming that these employees were able to keep their jobs — despite engaging in "dishonesty" allegedly worse than Plaintiff's "dishonesty" — because their dishonesty "was not directly related to FMLA leave." (Pl.'s Mot. Recons. 23.)  A motion for reconsideration is not an opportunity for a litigant to rebrief issues

that were inadequately briefed when the matter before the court was previously decided.

<u>Kennedy Indus.</u>, 2006 WL 1892685 at *1.  Moreover, Plaintiff again leaves unaddressed

Drexel's contention that these other employees are not proper comparators because Plaintiff was

terminated for both violations of the Leave Without Pay Policy and proven dishonesty under the

CBA. (<u>See</u> Mem. Op. n. 9.)

### 5.   The Court Did Not Err in Finding that Drexel's Articulated Reasons for Terminating Plaintiff's Employment were not Pretextual

Plaintiff avers the Court "erred by not finding that both articulated reasons for

terminating, progressive discipline and proven dishonesty, were pretext for discrimination under

the FMLA and ADA." (Pl.'s Mot. Reconsideration 24.)  Plaintiff's arguments here are

indistinguishable from his arguments in Sections II.B.6 & 7, *supra*, and have therefore already

been addressed.

### 6.   The Court Did Not Err in Finding that Plaintiff's ADA Claims Failed as a Matter of Law

Plaintiff closes with the conclusory assertion that he has made out a claim under the

ADA.  Plaintiff's arguments on this issue are an almost exact recitation of the arguments he

advanced in his Response in Opposition to Summary Judgment. (<u>Compare</u> Pl.'s Resp. Opp'n

Mot. Summ. J. 25 <u>with</u> Pl.'s Mot. Recons. 25.)  These arguments have already been considered

and rejected by the Court. (<u>See</u> Mem. Op. 26-29.)  Plaintiff offers no new evidence, and there has

been no intervening change in the controlling law.  Further, Plaintiff offers absolutely no support

for his assertion that the Court misinterpreted the standard for an ADA claim.  Indeed, Plaintiff

makes no new arguments whatsoever.  Consequently, Plaintiff has offered nothing which would

justify reconsideration of the Court's grant of summary judgment on his ADA claims.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Reconsideration is denied.  An appropriate order follows.